UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSH KLEIN, a California Resident; and COVALENCE CAPITAL LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>DOUGLAS JAE WOO KIM, a New York resident,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND FRAUD** |

For their cause of action against the defendants, Plaintiffs allege as follows:

**I.      PARTIES**

1.      Plaintiff Josh Klein is a California citizen. During all times material to this case, Mr. Klein resided in King County, Washington.

2.      Plaintiff Covalence Capital LLC ("Covalence") is a Delaware limited liability company with its principal place of business in Seattle, King County, Washington.

3.      Defendant Douglas J. Kim is a New York citizen. Defendant formerly resided in California but, on information and belief, no longer resides there.

COMPLAINT - 1

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the controversy is between citizens of different states, and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction under RCW 4.28.180 and .185, and under Fed. R. Civ. P. 4.

6. Venue in this Court is proper under 28 U.S.C. § 1391(b)(2), or in the alternative, § 1391(b)(3).

7. All conditions precedent to bringing this action have occurred, have been performed, or have been waived.

## III. FACTS

**A. Defendant induces Plaintiffs to lend him money based on false representations about the purpose of the loans, Defendants' ability to pay, the existence of other creditors, and prior investment performance.**

8. Covalence is an investment fund that places investor funds in cryptocurrency-related investments. Plaintiff Klein is a principal of Covalence along with his business partner, who is not a party to this action.

9. In or around March 2018, Defendant was introduced to Plaintiffs through a mutual acquaintance. Defendant began to correspond with Plaintiffs via email and text messages, and he sent many hundreds of messages to Mr. Klein, who then lived in Seattle, Washington.

10. Defendant represented that he worked at a startup in San Francisco, and also traded cryptocurrency. He said he had experience managing money and equities and was a currency trader for Bridgewater Associates, an investment management company.

11. Defendant represented that he had "a time sensitive offer that is mutually beneficial." He solicited a loan of the Ethereum cryptocurrency (ETH), which he represented he would invest and repay with significant interest, thereby allowing Plaintiffs to profit from the upside of Defendant's trading while Defendant assumed the risk of loss. Defendant represented that he had previously earned significant returns investing in cryptocurrency due to his ability to successfully analyze market signals and trends.

COMPLAINT - 2

12. Mr. Klein conducted due diligence on Defendant: he requested Defendant to provide contact details, identifying information, and representations that he had sufficient assets to repay any loans.

13. Defendant did so. Defendant represented, among other things, that he had several hundred thousand dollars in bank and brokerage accounts, some in dollar-denominated assets and other sums stored on cryptocurrency trading platforms. In addition, Defendant represented that he had 320 Bitcoin ("BTC") (worth $2 to $4 million during the time at issue in this case) stored in a hardware "wallet," located in a safety deposit box in New York.

14. From September 2018, to April 2019, Mr. Klein made numerous short-term cryptocurrency loans to Defendant for business purposes with repayment usually due within seven days or less. Defendant was sometimes a few days late, but initially he always repaid in full, along with accrued interest and late fees.

15. Given Defendant's apparent success in cryptocurrency trading, Covalence also began loaning funds to Defendant. Many of these loans were denominated in "USD Tether," ("USDT") a cryptocurrency for which the value of each unit is pegged at a 1:1 ratio to the U.S. Dollar.[1] Covalence loaned Defendant approximately $300,000 by way of two October 2018 loan agreements, both of which Defendant repaid in full.

16. In entering these and later loan agreements, Covalence relied on the following representations that Defendant made in September and October of 2018:

    a. That Defendant possessed approximately $340,000 in assets held as equities or cash;

    b. That Defendant's total outstanding debt obligations at that point were limited to $160,000 he owed to Covalence, 18 BTC to Mr. Klein, and $20,000 owed to a third party; and

---

[1] For simplicity's sake, Plaintiffs use USD when referencing amounts provided for in loans denominated in USDT.

COMPLAINT - 3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

        c.       That he had at least 200 BTC in the hardware wallet stored with the bank in New York, a storage form that crypto-industry participants call "cold storage."

17. In January 2019, Covalence loaned Defendant $150,000 with a 60-day maturity. On February 21, 2019, Covalence and Defendant entered a Revolving Loan Agreement (the "Revolver"), essentially a $250,000 line of credit. A true and correct copy of the Revolver is attached to this Complaint as **Exhibit A**.

18. In late March 2019, rather than re-pay the $150,000 due under the 60-day January 2019 loan, Covalence and Defendant agreed to roll that debt into the Revolver, effectively increasing its total credit limit to $400,000, all of which was outstanding. Attached as **Exhibit B** is a true and correct copy of a text message exchange in which Covalence and Defendant agreed to this modification.

19. Aside from this loan modification and the occasional late repayment, however, so far Defendant repaid in full all that he owed.

20. On April 3, 2019, Mr. Klein met Defendant for lunch in San Francisco. This was the first time they met in person. As mentioned, Defendant had continued, with few exceptions, to pay his debts and represented to Plaintiffs that his trading activities had been profitable. Defendant even insisted on paying for Mr. Klein's lunch, further suggesting to Mr. Klein that there were no issues with Defendant's ability to pay.

**B. Defendant fails to repay several loans but induces Mr. Klein and Covalence to loan him additional funds by misrepresenting his ability to pay and reasons for his failure to repay prior loans**

21. Defendant continued to lead Plaintiffs to believe that he was using their funds to finance his cryptocurrency-related investment and trading activities, and Plaintiffs continued to loan funds to Defendant.

22. By mid- to late-April 2019, however, Defendant's loans were significantly in arrears, as he failed to repay his debts and the interest and late fees due under the respective loan agreements.

COMPLAINT - 4

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

23. Defendant represented that he could pay the overdue loans, but that it made financial sense for him to continue accruing interest and late fees, because his current trades would soon generate large returns, notwithstanding that they left him with little cash on hand in the meantime.

24. Defendant also represented that his failure to repay was aggravated by two large cryptocurrency trading platforms that had frozen his account due to technical issues.

25. Defendant reassured Plaintiffs he would soon be able to access these funds once he and the customer service representatives from the trading platforms had resolved the technical issues.

26. Based on their own experience with these platforms, Plaintiffs understood such technical issues to be relatively commonplace.

27. In addition, Defendant provided Plaintiffs with documents and screenshots purporting to show his balances on the trading platforms as well as email communications with the platforms' customer service staff regarding attempts to resolve the technical issues.

28. Plaintiffs thus believed Defendants' representations and agreed temporarily to forbear from enforcing the loan agreements, especially given his past record of success.

29. On information and belief, these representations were false.

30. In May and June 2019, Defendant continued to solicit additional loans from Plaintiffs and from Mr. Klein in particular. Given that Defendants' recent repayment issues, however, Plaintiffs required Defendant to provide verifiable proof that Defendant had sufficient assets to repay his existing overdue loans as well as the additional loans he asked Mr. Klein and Covalence to extend.

31. Thus, in June, July, August, and September of 2019, Defendant provided financial documents purporting to show hundreds of thousands of dollars in assets in his brokerage and cryptocurrency trading accounts.

32. In fact, these representations were false. For example, one account balance provided by Defendant overstated by nearly 100% the actual balance

COMPLAINT - 5

in the account at the time. On information and belief, Defendant doctored, forged, or manipulated this document and other documents he provided to Plaintiffs to falsely establish his solvency and induce Plaintiffs to loan him additional funds and persuade them not to immediately enforce Defendant's existing defaults.

33. Similarly, in April, May, and June 2019, Defendant continued to represent that he had more than 100 BTC stored in the hardware wallet in a New York City bank vault. In September 2019, Defendant sent Plaintiffs a video recording of him connecting the hardware wallet to a computer and accessing the contents, which the video recording showed was approximately 150 BTC, at the time worth $1.5 million.

34. On information and belief, these representations were false, and Defendant had, by that time, either exhausted any funds held in the hardware wallet, if it ever existed, or falsified or otherwise manipulated the video recording.

35. Meanwhile, Plaintiffs continued to press Defendant on why he would not repay the outstanding loans if he had the funds to do so. Defendant came up with various reasons:

    a. He was in San Francisco and could not travel to New York to access the hardware wallet;

    b. Liquidating his investments to satisfy outstanding loans would have greater tax consequences compared to accruing additional late fees and interest, which he intended to pay in full once his current trades began printing returns; and

    c. A delay had occurred with respect to resolving technical issues with his frozen accounts on the cryptocurrency trading platforms.

36. At one point, Defendant indicated that he would agree to repay the outstanding loans with funds from the hardware wallet; he made a trip to New York and told Plaintiffs the purpose of the trip was, among other things, to retrieve the hardware wallet. But when Defendant returned to San Francisco, he admitted he did not have the hardware wallet, citing an unspecified scheduling issues that purportedly left him without enough time to retrieve it during his trip.

COMPLAINT - 6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

37. This dialogue continued into September and October 2019. Defendant pleaded with Covalence and Mr. Klein to loan him additional funds, which Covalence and Mr. Klein refused to do. As late as October 13, 2019, Defendant continued to falsely represent that he had no other creditors aside from Covalence and Mr. Klein.

**C.   Defendant reveals the existence of other creditors and continues to default on his loans.**

38. In November of 2019, Mr. Klein moved from Seattle to San Francisco for a job opportunity.

39. Defendant continued to beg Mr. Klein for additional loans, and Mr. Klein refused. Defendant was reluctant to further discuss his repayment issues electronically and instead asked Mr. Klein to meet in person to discuss them.

40. On or around December 13, 2019, Defendant and Mr. Klein met at a restaurant in San Francisco. Defendant admitted he had misled Plaintiffs about the existence of other creditors. In particular, he stated that a group of people with whom he had previously done business were asserting claims, based on prior agreements, against his assets. Defendant represented that his assets -- including the funds Plaintiffs had lent to him -- were in the custody of his attorney. But Defendant refused to provide the attorney's name or contact information.

41. By letter dated January 24, 2020, Covalence gave Defendant notice of termination under the Revolver, triggering Defendant's obligation to pay the outstanding balance, with accrued interest and penalties, by February 25, 2020.

42. To date, Defendant has not repaid the outstanding loans.

43. Defendant's total outstanding obligations under his loan agreements with Covalence (the "Covalence Loans") are as follows:

   a. An outstanding principal balance of $400,000, plus approximately $409,505 of interest and late fees due under the Revolver. The Revolver accrues interest and late fees at $960.27 per day;

COMPLAINT - 7

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

      b.      Approximately $3,995 in interest and late fees owed under an April 6, 2019 loan agreement, a true and correct copy of which is attached as **Exhibit C**; and

      c.      An outstanding principal balance of $200,000,[2] plus approximately $479,100[3] in interest and late fees owed under a June 25, 2019 loan agreement. This loan accrues 0.004 BTC in interest and $500 in late fees per day. A true and correct copy of the June 25, 2019 loan agreement is attached as **Exhibit D**.

44.    Defendant's total outstanding obligations under his loan agreements with Mr. Klein (the "Klein Loans") are as follows:

      a.      1.7 BTC and $4,000 in unpaid interest and late fees owed under an April 25, 2019 loan agreement, a true and correct copy of which is attached as **Exhibit E**.

      b.      An outstanding principal balance of 5 BTC plus 26.5 BTC in interest and $260,000 in late fees under a May 7, 2019 loan agreement. This loan accrues 0.05 BTC in interest and $500 in late fees per day. A true and correct copy of the May 7, 2019 loan agreement is attached as **Exhibit F**;

      c.      An outstanding principal balance of 15 BTC plus 77.3 BTC in interest and $256,500 in late fees under a May 19, 2019 loan agreement. This loan accrues 0.15 BTC and $500 in late fees per day. A true and correct copy of the May 19, 2019 loan agreement is attached as **Exhibit G**;

      d.      An outstanding principal balance of 5 BTC and $15,000 USD,[4] plus 32.3 BTC and $96,938 USDT in interest, and $255,500 in late fees under a May 21, 2019 loan

---

[2] Although the June 25, 2019 Covalence Loan provided for a loan of 20 Bitcoin (BTC), the agreement also provides that if 20 BTC is worth less than $200,000 USD, then Defendant is responsible for re-paying the 20 BTC plus the difference between the prevailing USD-equivalent of 20 BTC and $200,000. See June 25, 2019 loan, § 9. For the sake of simplicity, Covalence simply refers to Defendant's principal obligation as $200,000. But, he is responsible for repaying 20 BTC even if 20 BTC ends up being worth more than $200,000.

[3] This figure assumes a market price of $10,000 USD per BTC.

[4] As mentioned, certain amounts loaned to Defendant were denominated not in U.S. Dollars, but in USD Tether, a cryptocurrency pegged 1:1 to the U.S. Dollar. For simplicity's sake, this Complaint uses U.S. Dollars in discussing amounts denominated in USDT.

COMPLAINT - 8

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

agreement. This loan accrues .06 BTC and $750 in interest, and $500 in late fees, per day. A true and correct copy of the May 21, 2019 loan agreement is attached as **Exhibit H**;

   e. An outstanding principal balance of 3 BTC, plus 14.3 BTC in interest, plus a default penalty of 5 bitcoin, and $237,000 in late fees under a June 30, 2019 loan agreement. This loan accrues .03 BTC in interest and $500 in late fees per day. A true and correct copy of the June 30, 2019 loan agreement is attached as **Exhibit I**; and

   f. An outstanding principal balance of $57,000[5] plus $117,750 in interest and $77,500 in late fees under an August 12, 2019 loan agreement. This loan accrues $750 in interest and $500 in late fees per day. A true and correct copy of the August 12, 2019 loan agreement is attached as **Exhibit J**.[6]

45. Each of the Covalence Loans and the Klein Loans contain clauses that require the borrower, upon default, to pay all reasonable attorneys' fees and costs of collection.

**D.** **The Department of Justice charges Defendant with wire fraud.**

46. On July 9, 2020, the United States Attorney's Office for the Northern District of California charged Defendant by criminal complaint with one count of wire fraud under 18 U.S.C. § 1343. The charges were unsealed on July 15, 2020.

47. The affidavit supporting the criminal complaint alleges that Defendant solicited cryptocurrency loans from friends and acquaintances, which he told them were for business purposes or to trade cryptocurrency; but in fact, Defendant allegedly used the funds to finance his activities on online gambling websites.

48. According to the affidavit, Defendant solicited a short-term cryptocurrency loan from one victim in October 2017, the proceeds of which he soon transferred to an online cryptocurrency sportsbook and casino.

---

[5] More specifically, $57,000 figure is the result of a price-floor protection mechanism in the August 12, 2019 loan agreement. Depending on the price of bitcoin at the time of repayment, Defendant may owe more than $57,000.

[6] The interest and penalty amounts listed in this complaint are current as of late-October 2020.

COMPLAINT - 9

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

49. Defendant allegedly procured a $200,000 loan from a second victim in January 2018, which he then converted into cryptocurrency and used for online gambling. Defendant allegedly convinced his victims to provide him over $4.5 million in loans, all or part of which he allegedly transferred to cryptocurrency gambling websites.

50. A true and correct copy of the criminal complaint against Defendant, and supporting affidavit, are attached as **Exhibit K**.

51. Although the criminal charges against Defendant do not appear to describe the specific fraud that he perpetrated against Plaintiffs, on information and belief, Plaintiffs are victims of the scheme or artifice to defraud that Defendant is alleged to have committed in the criminal case.

## IV.   CAUSES OF ACTION

### Count I – Breach of Contract

52. Plaintiffs incorporate by reference as if expressly set forth in this paragraph the preceding allegations in ¶¶ 1–51.

53. Covalence and Defendant, and Mr. Klein and Defendant, are parties to the Covalence Loans and the Klein Loans, respectively, all of which are valid, existing contracts under which Plaintiffs agreed to loan funds to Defendant that Defendant agreed to repay by the maturity date with interest, and with late fees if paid after the maturity date.

54. Plaintiffs have fully performed their obligations under their respective loan agreements with Defendant, except for any obligations that Plaintiffs were prevented or excused from performing

55. Defendant has breached the Covalence Loans and the Klein Loans by doing the acts alleged above.

56. Defendant's breaches of these agreements are material.

57. As a proximate and direct result of Defendant's breaches, Plaintiffs have suffered damages in amounts equal to the unpaid principal, interest, and late fees due under the Covalence Loans and the Klein Loans.

COMPLAINT - 10

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**Count II – Common Law Fraud**

58. Plaintiffs incorporate by reference as if expressly set forth in this paragraph the preceding allegations in ¶¶ 1–51.

59. Defendant made representations of existing fact to Plaintiffs as alleged herein, including that: Defendant had no other creditors; Defendant was using the loaned funds for cryptocurrency trading and investment activities; Defendant had sufficient assets to repay the loans; Defendant's failure to repay the loans was due to innocent mistakes or other factors outside his control.

60. These representations were false.

61. Defendant knew these representations were false or was reckless as to their truth or falsity. Defendant's mental state in this regard is evident from, among other things, his admissions at his December 2019 meeting with Mr. Klein, the allegations in the criminal charges against him, and other evidence known to Plaintiffs.

62. These representations were material to Plaintiffs in that had Plaintiffs been aware of the truth, they would have acted differently with respect to entering these agreements with Defendant and enforcing their rights thereunder.

63. Defendant intended to, and did, induce Plaintiffs' reliance on these representations.

64. Plaintiffs were ignorant of the falsity of these representations.

65. Plaintiffs relied on the truth of these representations. In particular, had they known the truth, they would have not loaned money to Defendant to begin with, or in the case of certain misrepresentations, they would have acted far sooner to collect Defendant's debts.

66. Plaintiffs had the right to rely on these representations and their reliance was reasonable and justified.

67. As a proximate and direct result of Defendant's breaches, Plaintiffs have suffered damages in amounts equal to the unpaid principal, interest, and late fees due under the Covalence Loans and the Klein Loans.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## V. REQUEST FOR RELIEF

Plaintiffs respectfully asks this Court to grant the following relief:

A. Judgment in favor of Plaintiffs against Defendant for amounts equal to the unpaid principal, interest, and late fees due under the Covalence Loans and the Klein Loans.

B. An award of attorneys' fees and costs of collection to date as authorized by the Klein Loans and the Covalence Loans; and

C. Such other and further relief as this Court deems just and equitable.

DATED November 5, 2020.

K&L GATES LLP

By *s/ Daniel-Charles V. Wolf*
   Michael D. McKay, WSBA # 7040
   Daniel-Charles V. Wolf, WSBA # 48211
925 Fourth Ave., Suite 2900
Seattle, WA 98104-1158
Phone: (206) 623-7580
Fax: (206) 623-7022
*philip.guess@klgates.com*
*dc.wolf@klgates.com*

Attorneys Plaintiffs

COMPLAINT - 12

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022