The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSH KLEIN; COVALENCE CAPITAL LLC,

          Plaintiffs,

v.

DOUGLAS JAE WOO KIM,

          Defendant.

Case No.  2:20-cv-01628-BJR

ORDER ON BREACH OF CONTRACT JUDGMENT

## I. INTRODUCTION

Plaintiffs Josh Klein and Covalence Capital, LLC, filed this lawsuit against defendant Douglas Jae Woo Kim, alleging Defendant fraudulently induced Plaintiffs to lend him money for cryptocurrency trading and then breached the parties' contract.  The Court granted Plaintiffs summary judgment on their breach of contract claim, and Plaintiffs voluntarily dismissed their fraud claim. The parties now disagree on how much Plaintiffs should recover on their breach of contract claim, and before the Court is Plaintiffs' motion seeking a judgment.  Having reviewed the motion, the record of the case, and the relevant legal authorities, the Court will grant in part and deny in part Plaintiffs' motion.  The reasoning for the Court's decision follows.

## II.   BACKGROUND

The facts of this case are laid out in detail in the Court's March 10, 2022 order granting partial summary judgment for Plaintiffs. *See* Order, Dkt. 75 at 1-4. In summary, Plaintiff Klein is a principal of Covalence, a cryptocurrency investment fund. Pl. SJ Mtn., Dkt. 25 at 4. Defendant is an experienced cryptocurrency trader. *Id.*; Def. SJ Opp'n, Dkt. 66 at 3-4. Plaintiffs made a series of short-term, high-interest cryptocurrency loans to Defendant so that Defendant could make trades in the highly volatile cryptocurrency market. Pl. SJ Mtn., Dkt. 25 at 5-6; Def. SJ Opp'n, Dkt. 66 at 5-6. For example, one of Plaintiffs' loans was for $160,000 USDT[1] with an interest rate of 10% over the 90-day period of the loan—equating to 40% annually. Plaintiffs' loans also frequently imposed severe late fees of $500 or $1000 per day. Def. Opp'n, Dkt. 82 at 2. Defendant initially repaid Plaintiffs' loans but eventually fell into arrears. Order, Dkt. 75 at 1-4. There was no dispute that Defendant failed to repay several loans, and therefore the Court granted summary judgment on Plaintiffs' breach of contract claim. *Id.* at 6. The question now before the Court is to what extent Plaintiffs can recover the interest and late fees imposed by the various loan contracts.

The parties agree that there are nine unpaid loans at issue, some in USDT and others in bitcoin (BTC).[2] *See* Pl. Mtn. for Judgment, Dkt. 79 at 3-4. The parties do not dispute that Plaintiffs are entitled to recover the principal amount of the loans. Nor do they dispute that Defendant agreed

---

[1] "Tether (USDT) is an Ethereum token that is pegged to the value of a U.S. dollar . . . ." *Tether price*, COINBASE, https://www.coinbase.com/price/tether (last visited Mar. 6, 2022).

[2] Plaintiffs organize these loans in a helpful table to which the Court will refer. *See* Pl. Mtn. for Judgment, Dkt. 79 at 3-4.

2

to pay very high interest rates and late fees until the loans came due (or "matured").  As noted above, Plaintiffs' loans "were intended to be very short term, often maturing in a number of days . . . bore extraordinarily high interest rates through maturity, often at or exceeding 1% per day . . . [and] purported to assess onerous late fees . . . [of] $500 (or $500 USDT) per day."  Def. Opp'n, Dkt. 82 at 2.

Indeed, one of Plaintiffs' experts calculated that, on a 20.00 BTC/$400,000 USDT loan made in June 2019 bearing an interest rate of 2% per 10 days over 1,094 days, Defendant now owes $875,200 in interest alone.  Manji Decl., Dkt. 81-1 at PDF 2.  The contract for this loan also imposed a late fee of $1,000 per day which, over 1,081 days, amounts to $1,081,000.  *Id.*

### A. Prejudgment Interest

The parties dispute the rate of interest that should be applied to Defendant's overdue loans between the time that they came due in 2019 and the date of this Court's judgment—otherwise known as prejudgment interest.  For example, Plaintiffs made a 20.00 BTC/$400,000 USDT loan on June 25, 2019.  *Id.*  The loan matured on July 7, 2019.  *Id.*  There is no dispute that between June 25 and July 7, the loan bore an interest rate of 2% per 10 days.  *Id.*  The parties' dispute is over what happened after Defendant failed to pay on July 7.  Plaintiffs argue that the 2%/10 days interest rate continued (and still continues) to apply to the unpaid debt.  If that is correct, Defendant would now owe over $875,200 in interest on this loan.  *Id.*  Defendant argues that these contractual interest rates[3] applied only until the loans matured, and that the parties did not agree on what the

---

[3] Each loan contract imposed a slightly different interest rate.  Pl. Mtn. for Judgment, Dkt. 79 at 5.  When the Court uses the term "contractual interest rate," it refers generally to the very high interest rates in the contracts, as distinct from the 12% statutory rate Defendant asks the Court to apply.

3

interest rate would be if Defendant failed to pay. According to Defendant, after the loans matured, "Washington law sets prejudgment interest at 12% unless the parties expressly agree that a different prejudgment interest rate applies." Def. Opp'n, Dkt. 82 at 8 (citing RCW 19.52.010(1)). Plaintiffs argue that the parties did in fact expressly agree that the contractual interest rates would continue to apply after the loans matured, and that therefore the statute was not triggered. *See* Pl. Reply, Dkt. 84 at 2-3. The resulting disparity in the parties' calculations of damages amounts to millions of dollars.[4]

### B. Late Fees

The parties dispute whether the "onerous" late fees attached to Plaintiffs' loans are enforceable. Each loan contract set a different late fee, but all of them are indeed very high. For example, the contract for the 20.00 BTC/$400,000 USDT loan discussed above stated that Defendant would pay a late fee of $1,000 per day. Manji Decl., Dkt. 81-1 at PDF 2. If the late-fee provision is enforceable, Defendant would owe over $1,081,000 in late fees on this loan, as he has failed to pay for over 1,081 days. *Id.*

Both the applicable interest rates and the enforceability of the late fee provisions rest on the Court's interpretation of the contracts. Each loan's contract is slightly different, but the parties agree that the below provisions are representative:

> **Loan Amount & Interest**
> The Lender promises to loan 20 Bitcoin (collectively, "principal amount") to the Borrower and the Borrower promises to repay this principal amount to the Lender, with interest payable on the unpaid principal at the rate of 6 percent (1.2 BTC) per

---

[4] The exact amount is difficult to calculate, because the calculations provided to the Court do not separate interest from late fees. *See* Def. Opp'n, Dkt. 82-1 at 2.

4

seven (7) days, with interest accruing daily. . . .

**Payment**
This Loan and any accrued interest will be repaid in full no later than 11:59pm PST on May 2, 2019 ("repayment date"). . . .

**Late Fee**
Beginning two (2) days after the stated repayment date the loan is unpaid, Borrower will pay a penalty of $500 USD per day, to be paid in fiat currency. Interest on the Principal Amount will be due at the same rate as outlined in section one (1) on the unpaid, late balance.

Klein SJ Decl., Dkt. 26 at PDF 381-82.

### III.   DISCUSSION

Contract disputes are governed by state law, and the parties agree that Washington law applies. Pl. Mtn. for Judgment, Dkt. 79 at 5; Def. Opp'n, Dkt. 82 at 8. "A contract . . . should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." *Colo. Structures, Inc. v. Ins. Co. of Washington*, 161 Wn. 2d 577, 588 (2007). Washington courts interpret contracts based on the plain meaning of their provisions, and "[t]he parties' subjective intent is irrelevant if [the court] can ascertain their intent from the words in the agreement." *Martin v. Smith*, 192 Wn. App. 527, 532 (2016). The court "give[s] words their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Any ambiguity in the contract is construed against the party that drafted it. *Petersen-Gonzales v. Garcia*, 120 Wn. App. 624, 632 (2004) (citing cases); *Cont'l Ins. Co. v. PACCAR, Inc.*, 96 Wn. 2d 160, 167 (1981) (noting drafter was in better position to prevent ambiguity). A provision is ambiguous if it is fairly susceptible to more than one reasonable interpretation. *GMAC Corp. v. Everett Chevrolet, Inc.*, 179 Wn. App. 126, 135 (2014).

### A. Prejudgment Interest

"Prejudgment interest is a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress.'" *Schneider v. Cnty of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (quoting *West Virginia v. United States*, 479 U.S. 305, 311 n. 2 (1987)). The parties agree that prejudgment interest in this case is governed by Washington law. *See* Pl. Reply, Dkt. 84 at 2 (citing *Oak Harbor Freight Lines, Inc. v. Sears Roebuck & Co.*, 513 F.3d 919, 961-62 (9th Cir. 2008)). The governing Washington statute provides that "every loan or forbearance of money, goods, or thing in action shall bear interest at the rate of twelve percent per annum where no different rate is agreed to in writing between the parties." RCW 19.52.010(1).

Defendant argues that the parties did not expressly agree on the rate of interest that was to accrue on the unpaid balance in the event of default. Plaintiffs argue that they did. The relevant section of the parties' contract states:

> **Late Fee**
> Beginning two (2) days after the stated repayment date the loan is unpaid, Borrower will pay a penalty of $500 USD per day, to be paid in fiat currency. <u>Interest on the Principal Amount will be due at the same rate as outlined in section one (1) on the unpaid, late balance.</u>

Klein SJ Decl., Dkt. 26 at PDF 382 (emphasis added). The "section one" to which this provision refers provides, in relevant part, that "Borrower promises to repay this principal amount to the Lender, with interest payable on the unpaid principal at the rate of 6 percent (1.2 BTC) per seven (7) days." *Id.* at PDF 381. Defendant claims that, "by its own terms, [this provision] has no effect on the interest rate that applies under the agreement" and "simply refers back to the 'Loan

6

Amount' section." *Id.* Defendant thus appears to argue that the interest provision in the Late Fee section is merely repetitive of the section that specifies the short-term interest rate "on the unpaid principal at the rate of 6 percent (1.2 BTC) per seven (7) days."

Defendant's interpretation is not reasonable. The provision expressly states that "[i]nterest . . . will be due . . . on the unpaid, *late* balance." Reading this language as repetitive of an earlier section would nullify most of the Late Fee section, even though the surrounding context indicates the parties intended it to have independent significance. The section is entitled "Late Fee," clearing indicating that it governs in the event of nonpayment. Furthermore, only this section refers to a "late balance" and thus it is not repetitive of the "Loan Amount" (or any other) section. It is also unclear why the phrase "interest . . . will be due at the same rate as outlined in section one (1)" would simply "refer back" to section one without importing any of its contents. The plain language of this phrase indicates that the Late Fee section imports the interest rate of "6 percent (1.2 BTC) per seven (7) day" and applies it to the late balance in the event of nonpayment.

The cases Defendant cites are easily distinguishable. For example, in *TJ Landco*, the contract was silent on what interest rate would apply to the plaintiffs' loans if defendant defaulted. *TJ Landco, LLC v. Harley C. Douglas, Inc.*, 186 Wn. App. 249, 257 (2015). Here, the contract is not silent on the subject and in fact expressly addresses it. The *TJ Landco* court noted that the contract did not contain language suggesting that the agreed upon interest rate would apply "until paid." *Id.* at 258 ("Our cases have long distinguished between agreements to pay interest at maturity and agreements to pay interest 'until paid.'" (citing *Bank v. Doherty*, 42 Wn. 317, 329-30 (1906)). However, the court did not hold that the contract must contain those words exactly. The parties to a contact must simply make their intent clear, and here it is abundantly clear that the

parties contemplated the possibility of default and intended for the contractual interest rate to apply to the unpaid, late balance. Accordingly, the Court will enforce that rate as prejudgment interest.

**B. Late Fees**

The remaining question is whether Plaintiffs can recover millions of dollars in late fees in addition to interest. The parties agree that the decisive issue is whether the fees qualify as liquidated damages or a penalty. *See* Pl. Reply, Dkt. 84 at 5-6; Def. Opp'n, Dkt. 82 at 3. "Under Washington law, a liquidated damages provision is enforceable, but a penalty is not." *KIC, LLC v. Zhejiang Dicastal Hongxin Tech. Co. Ltd.*, 2021 WL 3861635, at *9 (W.D. Wn. Aug. 30, 2021); *see also Walter Implement, Inc. v. Focht*, 730 P.2d 1340, 134 (Wn. 1987); *Buchanan v. Kettner*, 97 Wn. App. 370, 373 (1999).

By every measure, the late fees in the parties' loan agreements are unenforceable penalties, not reasonable estimates of liquidated damages. Most obviously, the Late Fee provision in the contract states that "Borrower will **pay a penalty** of $500 USD per day." Klein SJ Decl., Dkt. 26 at PDF 382 (emphasis added). Thus, it is clear that at the time of contracting, the parties considered the late fees to be penalties and not liquidated damages.

The Court's examination could end right there. But further, the fees do not operate as liquidated damages. Liquidated damages are "an amount of compensation to be paid in the event of a breach of contract, the sum of which is fixed and certain by agreement." *Chodos v. West Publishing Co.*, 292 F.3d 992, 1002 (2002) (applying California law). Liquidated damages clauses are favored if "the liquidated sum represents a reasonable prediction of the harm to the seller if the buyer breaches the agreement." *Watson v. Ingram*, 124 Wn.2d 845, 851 (1994). Plaintiffs fail to articulate what unquantifiable harm the late fees could represent that is not covered by the loans'

principal and interest.  Indeed, Plaintiffs' claims that they were "unable to lend to others" and "received no return" describe harms that more closely resemble those compensated by prejudgment interest.  Pl. Reply, Dkt. 84 at 6; *Schneider*, 285 F.3d at 789 ("Prejudgment interest is a measure that 'serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered . . . .'" (citation omitted)).

Moreover, the amount of each late fee bears no relationship to the size of the loan.  In April 2019, Plaintiffs loaned Defendant 20 Bitcoin and imposed a late fee of $500 per day.  Def. Opp'n, Dkt. 82 at 7.  Weeks later, Plaintiffs made a loan of 3 Bitcoin that also carried the same late fee.  *Id.*  At current prices, the difference in the value of these loans would be roughly $340,000.[5]  It is difficult to imagine how $500 per day could be a reasonable estimate of damages from such vastly different sums, and Plaintiffs' only explanation is that sophisticated parties "are entitled to contract in a manner that appropriately allocates risk and tailors liquidated damages for that risk."  Pl. Reply, Dkt. 84 at 7.  That is insufficient to turn what, at face value, appear to be unenforceable penalties into reasonable damages forecasts.

In cases where courts have enforced provisions for liquidated damages, the party seeking them explained their forecast and its reasonableness with some degree of specificity.  *E.g.*, *Buchanan*, 97 Wn. App. at 374 (liquidated damages calculation accounted for overdue rent and "expenses such as underlying mortgages, utilities and other associated fees that must be paid");

---

[5] *Bitcoin USD (BTC-USD)*, Yahoo Finance, https://finance.yahoo.com/quote/BTC-USD/?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAACd2h04a_qDNvWx45X06WfT254ZaUXMhBhlga9wGlCcI_e9kyvwwfKgKtBww0c_8zI__2ZiCdX5j5jUp61QcfAYcCkdTIPCsfJeEPiRoUJcw0ygazKc2KZzS1R3LIoqZHapr_M_Ov227WFqmV_Q5lkvubwS-0_uczIb9prYbHg_b.

*Watson*, 124 Wn. 2d at 854 ("The $15,000 earnest money deposit represented several variables, including the value of improvements [defendant] was required to make under the contract, fluctuations in the real estate market, and lost value of the use of the net sale proceeds . . . ."); *Tristar Fin., Inc. v. Allied Commercial Partners, Inc.*, 2012 WL 1327811, at *2-3 (W.D. Wn. April 16, 2012) (explaining that court was "initially reluctant" to award treble damages, until plaintiff provided additional context and evidence of reasonableness).  Plaintiffs here argue that "Defendant's nonpayment left plaintiffs to bear the entire risk of downward fluctuations for cryptocurrencies," but they do not provide examples of typical market fluctuations or evidence that onerous late fees are common in the cryptocurrency industry.  Pl. Reply, Dkt. 84 at 7.  Only an extreme level of market volatility would justify the late fees in this case—which now exceed the underlying loans' principal and interest by an extraordinary amount—and Plaintiffs' vague references to unquantified fluctuations in cryptocurrency prices provide no specificity at all.

Accordingly, the Court finds that, based on both their plain language and operation, the late fees in the parties' loan agreements are unenforceable penalties.

### C. Costs and Attorneys' Fees

Each of the loans at issue provides that Defendant shall pay "all reasonable attorneys' fees and costs of collection" in the event of default.  Pl. Mtn. for Judgment, Dkt. 79 at 6.  Defendant does not contest the validity of these provisions, and it is undisputed that he defaulted on these loans and breached the agreements.  Therefore, the Court finds Defendant must pay Plaintiffs' reasonable costs and attorneys' fees incurred in this litigation.

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for judgment (Dkt. 79) GRANTED IN PART

and DENIED IN PART. The motion is granted as to Plaintiffs' claims for interest accrued at the rates specified in each contract and as to costs and attorneys' fees. The motion is denied as to Plaintiffs' claim for late fees. As Plaintiffs' proposed judgment does not clearly separate the principal amount owed on each loan from the interest and late fees, Plaintiffs are directed to submit a declaration with a calculation of the principal and interest owed for each loan, up to the date of this order, no later than November 4, 2022. No later than November 4, 2022, Plaintiffs must also submit a declaration containing a breakdown of their reasonable costs and attorneys' fees. Unless Defendant has a valid objection to either of these declarations, the Court will then order the clerk to enter a final judgment, which will include a calculation of post-judgment interest at the rate set by 28 U.S.C. § 1961.

DATED this 19th day of October, 2022.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE